**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**August 12, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

ELZI NOEMI MARQUEZ-CORTEZ;
A.V.M.,

     Petitioners,

v.

TODD BLANCHE, United States Attorney
General,*

     Respondent.

No. 25-9545
(Petition for Review)

_____

**ORDER AND JUDGMENT***
_____

Before **TYMKOVICH**, **McHUGH**, and **FEDERICO**, Circuit Judges.
_____

Elzi Marquez-Cortez and her daughter A.V.M. ("Petitioners"), natives and

citizens of Honduras, petition for review of a decision of the Board of Immigration

Appeals ("BIA") upholding the immigration judge's ("IJ") denial of their

---

   * On August 10, 2026, Todd Blanche became the Attorney General of
the United States. Consequently, his name has been substituted as Respondent. *See*
Fed. R. App. P. 43(c)(2).

   * After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

applications for asylum, withholding of removal, and protection under the

Convention Against Torture ("CAT").  Exercising jurisdiction under 8 U.S.C.

§ 1252(a)(1), we deny the petition for review.

## I.     Background

Petitioners entered the United States without valid entry documents in

September 2016.  Marquez-Cortez conceded removability and filed for asylum,

withholding of removal, and CAT relief, with A.V.M. as a derivative beneficiary.

In the applications for relief, Petitioners argued that they were threatened and

faced future harm in Honduras due to their anti-gang political opinions and

membership in four particular social groups:  1) Honduran witnesses of gang crimes

who reported the crimes to police; 2) Honduran witnesses of MS-13 or M-18 crimes

known to have reported the crime to the police; 3) Honduran witnesses of MS-13 or

M-18 crimes who reported the crime to the police; and 4) Honduran women.  They

attached country conditions evidence, which included documentation of mistreatment

of women and the existence of a witness protection program in Honduras.

The IJ held a hearing on the applications.  Marquez-Cortez testified to the

following.  She and A.V.M. had to leave Honduras after being threatened in August

2016.  One day Marquez-Cortez went to the store, leaving 16-year-old A.V.M. at

home.  Three masked men entered the home, grabbed A.V.M., and demanded money.

After finding no money in the home, the men became upset and threatened to return

and rape and kill A.V.M. and Marquez-Cortez if they did not get any money.

Marquez-Cortez believed the men were gang members because they wore masks, but

she did not know what gang they were affiliated with. She thought that Petitioners were targeted because they were viewed as vulnerable women who lived alone.

Three days after the incident, Marquez-Cortez took a five-hour bus ride to report the incident to the Honduran police. The police took notes on the incident and said that they would send a patrol to watch the area where Marquez-Cortez lived. But they did not send a patrol car and did not follow up after the report.

Two days after making the report, Marquez-Cortez received a threatening phone call. The person on the phone told her that they knew she had filed a police report and were going to come kill her and A.V.M. Marquez-Cortez believed that they knew about her report because they were in contact with the police, as she told no one about the incident or that she reported it. She believed that the attackers were angry that she did not stay quiet. Marquez-Cortez believed that the gang would return to rape and kill her and A.V.M. because they were angry about the report. After the phone call, Marquez-Cortez and A.V.M. left their home, and went to stay with a friend who lived five hours away. They then came to the United States.[1]

The IJ denied relief and ordered the Petitioners removed to Honduras. In 2021, the BIA affirmed the IJ's decision. Petitioners filed a petition for review before this court. The proceedings were remanded to the BIA on the government's motion in 2022.

---

[1] A.V.M. also testified. Her testimony mirrored her mother's, with some additional details on the attack at the family home.

In 2025, the BIA entered a three-member panel order affirming the IJ's decision.  It first discussed the asylum and withholding of removal applications.  The BIA determined that Petitioners' "witnesses to crime" social groups were not socially distinct.  It determined that Petitioners did not publicly assist law enforcement and "the record [did] not establish that members of the public knew or had access to the respondents' police report, or that Hondurans who file a police report, without opposing the criminals in a public manner through an act such as testifying, are offered special legal protection in Honduras."  AR at 4.

The BIA then determined that Petitioners did not establish a nexus between past harm or the threat of future harm on account of imputed anti-gang or pro-rule-of-law political opinions.  The BIA also found that Petitioners had not demonstrated that they were harmed or faced future harm because of their membership in the "Honduran women" social group.

The BIA found that the application for CAT relief failed because the record did not establish that there was any governmental acquiescence.  It acknowledged that the gangs monitored people and that there was general evidence of violence against women in Honduras.  But it determined that Petitioners did not provide specific evidence to support a finding that there was governmental acquiescence because there was no indication the police collaborated with gang members and a lack of police resources did not amount to acquiescence.

Petitioners then filed this petition for review.

## II.    Discussion

When a BIA three-member panel issues a full explanatory opinion, we review only the BIA decision. *O.C.V. v. Bondi*, 153 F.4th 974, 981 (10th Cir. 2025). We review the BIA's legal determinations de novo and its factual findings for substantial evidence. *Id.* at 982. Under the substantial evidence standard, "factual findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (citation omitted).

### A.    Exhaustion

Before addressing the merits of Petitioners' claims, we first note that they did not raise one of their appellate arguments before the BIA. Specifically, Petitioners argue that the BIA wrongly interpreted the withholding of removal statute and erred when it applied *In re C-T-L-*, 25 I. & N. Dec. 341, 343-48 (BIA 2010). Petitioners ask us to decline to defer to *In re C-T-L-*, despite not briefing the issue before the BIA. *See* Op. Br. at 31. A noncitizen must "exhaus[t] all administrative remedies available to [them] as of right." 8 U.S.C. § 1252(d)(1). Petitioners did not present this argument to the BIA, as they acknowledge. *See* Op. Br. at 29 n.6. The government has not invoked § 1252(d)(1), but forfeiture "binds only the party not the court," and we retain discretion to enforce exhaustion on our own. *Miguel-Pena v. Garland*, 94 F.4th 1145, 1157–58 (10th Cir. 2024). We exercise that discretion and decline to consider the argument in the first instance.

### B. Asylum & Withholding of Removal

Petitioners challenge the BIA's conclusions that they were ineligible for asylum and withholding of removal.  First, Petitioners challenge the BIA's conclusion that the "witnesses to crime" social groups were not socially distinct because particular social groups should be assessed on a case-by-case basis, and ocular visibility is not required to find that a proposed social group is socially distinct.  Second, they challenge the BIA's nexus findings regarding the "Honduran women" social group and persecution and anti-gang political opinion.

To be eligible for asylum, Petitioners must show that they are unwilling or unable to return to Honduras "because of persecution or a well-founded fear of persecution on account of . . . membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A).  Similarly, eligibility for withholding of removal is available when an applicant's "life or freedom would be threatened in [the country of removal] because of the [applicant's] . . . membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A).  The statute does not define "particular social group."  *See Rodas-Orellana v. Holder*, 780 F.3d 982, 990 (10th Cir. 2015).  The BIA has interpreted the phrase to mean the group 1) shares "a common, immutable characteristic . . . beyond the power of an individual to change," 2) is defined with "particularity," meaning it "cannot be indeterminate[,] . . . too subjective, inchoate, and variable," and 3) is socially distinct, meaning it is "perceived as a group by society."  *Id.* at 990-91 (internal quotation marks and emphasis omitted).  "The burden of proof for withholding of removal is higher than

6

for asylum." *Escobar-Hernandez v. Barr*, 940 F.3d 1358, 1362 (10th Cir. 2019) (internal quotation marks omitted). So, failure to meet the burden of proof for an asylum claim forecloses a withholding of removal claim based on the same facts. *Id.*

      1. <u>Witnesses to crime social groups</u>

The BIA did not impose an ocular-visibility requirement on Petitioners' social groups. It did consider societal perception of those groups. Perception of a proposed social group is an important factor in deciding whether a proposed group is socially distinct. That language is found in the BIA's definition of a social group. *See Rodas-Orellana*, 780 F.3d at 991 (describing socially distinct to be "*perceived* as a group by society"). A critical aspect of societal perception is whether a group is identifiable in society, which the BIA accurately observed here when analyzing Petitioners' arguments. *See* AR at 4 ("[T]he record does not establish that members of the public knew or had access to the respondents' police report, or that Hondurans who file a police report, without opposing the criminals in a public manner . . . are offered special legal protection in Honduras."). Petitioners' challenge to the BIA's decision misrepresents the BIA's opinion and the evidence before it. That the gang may have viewed Petitioners as people who reported crimes to the police does not establish that Honduran society perceives such groups to be distinct. *See id.* at 992. The BIA did not err or impose a hardline ocular visibility requirement, and substantial evidence does not compel an opposite conclusion.

2. Nexus

Nexus is a factual determination that we review for substantial evidence. *See Miguel-Pena*, 94 F.4th at 1159. To establish a nexus, an asylum applicant must demonstrate that her protected ground "was or will be at least one central reason for" the persecution she suffered or fears. 8 U.S.C. § 1158(b)(1)(B)(i). The protected ground "cannot be incidental, tangential, superficial, or subordinate to another reason for harm," nor can it "play a minor role in the [applicant's] past mistreatment or fears of future mistreatment." *Dallakoti v. Holder*, 619 F.3d 1264, 1268 (10th Cir. 2010) (internal quotation marks omitted). "Of course, a persecutor can have multiple motives for targeting someone. . . . But even when the protected ground is intertwined with unprotected reasons, the protected ground must still be a central reason." *Orellana-Recinos v. Garland*, 993 F.3d 851, 855 (10th Cir. 2021) (internal quotation marks omitted).

The BIA considered the protected grounds Petitioners asserted. It reviewed Petitioners' arguments on imputed political opinion and the "Honduran women" social group, discussed the applicability of the record evidence to those claims, and explained why Petitioners' failed to show a nexus between those grounds and the harm they suffered. *See* AR at 4-5.

Substantial evidence supports the BIA's finding that neither sex nor political opinion was a central reason for the crime and threats against Petitioners. Marquez-Cortez's testimony supports the finding that she and her daughter were targeted for something the attackers wanted – money. It also supports the finding

that they were threatened after the police report for personal retribution from the attackers. Further, filing a police report was insufficient to show that any opinion was imputed to the Petitioners beyond opposition to being victims of the initial attack. *See Miguel-Pena*, 94 F.4th at 1160 ("[T]here is no nexus when there is no evidence that the gang would be hostile toward the targeted individuals absent their financial or recruitment motives." (brackets and internal quotation marks omitted)); *Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir. 2003) (stating that "acts of common criminality or personal hostility . . . do not implicate asylum eligibility"). And Petitioners' country conditions evidence does not compel a contrary conclusion. It contextualized the danger of living in Honduras as a woman and identified the existence of a witness protection program. But it does not compel the conclusion that either sex or anti-gang political stances were a central reason for the actions taken against Petitioners' based on Marquez-Cortez's testimony. Accordingly, the BIA did not err in concluding that Petitioners failed to establish eligibility for asylum and withholding of removal.

### C. CAT Relief

Petitioners argue that the BIA ignored country conditions evidence that the Honduras government failed to address gang violence against women. They also argue that the BIA wrongfully required them to show that the police and the gang directly communicated with one another.

"Relief from removal under the CAT is mandatory if the applicant proves that it is more likely than not that he or she would be tortured if removed to the proposed

9

country of removal." *Garcia-Botello v. Bondi*, 168 F.4th 1245, 1257 (10th Cir. 2026) (internal quotation marks omitted). Acquiescence requires that the public official have prior awareness of the activity and "thereafter breach his or her legal responsibility to intervene to prevent such activity. Such awareness requires a finding of either actual knowledge or willful blindness." *Id.*

The record does not indicate police acquiescence. Marquez-Cortez's testimony did not link the police to the threatening phone call she received. And while she speculated that the police told the gang of the report, nothing in the record corroborates that account, and her suspicion alone does not establish the conclusion that the police acquiesced in the attack and threats against Petitioners. Petitioners submitted general evidence regarding targeted violence against women and government corruption in Honduras. Such general evidence is insufficient to show that Petitioners are entitled to CAT protection, and the BIA was not wrong to make that determination. *See Escobar-Hernandez*, 940 F.3d at 1362 ("[P]ervasive violence in an applicant's country generally is insufficient to demonstrate the applicant is more likely than not to be tortured upon returning there."). And the BIA specifically discussed Petitioners' country conditions exhibits. Just because the BIA reached a conclusion Petitioners disagree with does not mean that it disregarded the evidence before it.

10

### III.    Conclusion

For the foregoing reasons, we deny the petition for review.


Entered for the Court


Timothy M. Tymkovich
Circuit Judge